IN THE UNITED STATES DISCTRICT COURT

NORTHERN DISTRICT OF NEW YORK

------------------------------------------------

**Morton D. Simpson, Susie Tucker-Ross, Michael M. Riddick, Alvin Morgan, Renee Bradley, Geraldine Bell, Janice Bibb-Jones, Larry Maudlin, Gustavo Santos, Cheryl Glenn and Conrad Reid,** on their own behalf and on behalf of all similarly situated Black and Hispanic persons,

Plaintiffs,

vs.

NYS DEPARTMENT OF CIVIL SERVICE and GOERGE SINNOTT, sued in his individual and personal capacity.

Defendant.

------------------------------------------------

CIVIL ACTION NO. 04-CV-1182

**Report of James L. Outtz, Ph.D.**

Prepared by:

James L. Outtz, Ph.D.
Outtz and Associates
816 Connecticut Avenue, N.W.
Suite 800
Washington, D.C. 20006

January 30, 2008

**Morton D. Simpson, et al, on their own behalf and on behalf of all similarly situated**

**Black and Hispanic persons**

CONTENTS

Table of Contents…………………………………………………………………………2

Introduction………………………………………………………………………………3

      Purpose…………………………………………………………………………......3

      Qualifications……………………………………………………………………….3

      Sources of Information……………………………………………………………5

Rationale…………………………………………………………………………………..5

      Standard for Determining Validity…………………………….…………....……6

      Test Development……………………………………………..………………13

      Adverse Impact………………………………………………..…………….....15

Conclusions…………………………………………………….………….......…...18

**Appendices**

Appendix A:   Curriculum Vitae…..……………….………………………....……....19

Appendix B:   List of Documents Relied Upon…………………………….…….……60

Appendix C:   Previous Testimony…………......………………………….…….…..62

Appendix D:   Employment Testing for Validity – Workshop Outline………….……..63

## INTRODUCTION

### Purpose

I have been retained by the law firm of Gary, Williams, Finney, Lewis, Watson, and Sperando, on behalf of Plaintiffs, to review relevant materials and formulate an opinion as to the validity of a promotion examination used by the New York State Department of Civil Service (hereafter, NYS-DCS). The examination was used from 1996 to 2007 to screen candidates for promotion to management positions. This report presents my findings and conclusions. I am being compensated at a rate of $425 per hour for my services in this case.


## Qualifications

I am an Industrial-Organizational (I/O) Psychologist in private practice in Washington, DC for over 25 years. Industrial-Organizational Psychology is the application of psychological principles, theory, and research to the world of work. I hold a Ph.D. in I/O Psychology, which I received from the University of Maryland in 1976. My area of specialization is selection, which encompasses the manner in which organizations hire, retain, develop, evaluate and promote employees.

I am a Fellow in the Society for Industrial and Organizational Psychology (SIOP) as well as the American Psychological Association, and a consulting editor to the Journal of Applied Psychology. I served on the SIOP committee to revise the Principles for the Validation and Use of Personnel Selection Procedures. The Principles detail accepted professional practice with regard to the development and validation of personnel selection practices and procedures. Over the past fifteen years, I have served on a

number of committees of the National Academy of Sciences charged with addressing

national issues of employment selection and organizational staffing. I recently served on

the National Academy of Sciences' Committee for the Study of Federal Aviation

Administration Aviation Safety Inspector Staffing Standards. Past committee service

includes the Committee on Workforce Needs in Information Technology and the Board

on Testing and Assessment.

I have published works on a variety of topics including racial discrimination in

employment; the role of cognitive ability tests in employment selection; the effect of

testing medium on validity and subgroup performance, and implementing fair selection

strategies. I have also written reviews of published texts on affirmative action and

workforce diversity.

A significant part of my practice over the past 25 years has been devoted to the

development and validation of selection procedures for public and private sector

organizations. I have been retained by employers in both the public and private sectors

and developed over 100 selection devices and/or selection procedures for entry level and

managerial positions. A representative sample of clients includes, ALCOA Inc., CSX

Transportation, Publix Super Markets Inc., Potomac Electric Power Company, the cities

of New York, Chicago and San Francisco, the Federal Deposit Insurance Corporation, the

United States Department of Justice (Federal Bureau of Investigation) and the United

States Department of Labor. Selection procedures that I developed have been

administered to over 500,000 applicants for entry-level and supervisory positions in

organizations throughout the United States. I have been retained by legal counsel on

behalf of organizations such as The Boeing Corporation, Matsushita Communications
Industrial Corporation of USA and Merrill Lynch, Inc.

I have been retained as an expert for plaintiffs and defendants in litigation
involving human resource policies, practices and procedures such as promotion, job
posting and performance appraisal. I have testified at trial as an expert witness for
plaintiffs as well as defendants on over 20 occasions. A more complete description of my
experience and qualifications is contained in my curriculum vitae, which can be found in
Appendix A.

## Sources of Information

The opinions presented in this report are based on my examination of various
documents produced during discovery, documents and materials filed in this case,
deposition transcripts, and other materials referenced in this report. A list of these
documents is contained in Appendix B.

## Rationale

The purpose of this report is to present my findings and conclusions with regard to the
validity of the Promotion Test Battery (hereafter, the Promotion Battery) used by the
NYS-DCS to determine promotions to managerial positions throughout the agency. My
evaluation of the validity of the Promotion Battery is based upon the following criteria.

1. Professional Standards in the field of testing and test validation
2. Federal regulations governing promotion practices
3. My experience in developing and validating promotion examinations

5

## Standards for Determining Validity

The standards for determining the validity of a selection procedure such as the
Promotion Battery are embodied in the following documents:

1. *Society for Industrial and Organizational Psychology, Inc. (2003). Principles for
   the Validation and Use of Personnel Selection Procedures (4th edition). Bowling
   Green, OH.* (hereafter, the Principles)

This document specifies principles of good practice in the choice, development,
evaluation, and use of personnel selection procedures.

2. *American Educational Research Association (1999). Standards for Educational
   and Psychological Testing. Washington, DC.* (hereafter, the Standards)

This document provides criteria for the evaluation of tests, testing practices, and the
effects of test use. It is a technical guide that can be used as the basis for evaluating
testing practices.

3. *Equal Employment Opportunity Commission (1978). Uniform Guidelines on
   Employee Selection Procedures. Washington, DC.* (hereafter, the Guidelines)

This document incorporates a single set of principles that are designed to assist
employers, labor organizations, employment agencies, and licensing and certification
boards in complying with requirements of federal law prohibiting employment practices
that discriminate on grounds of race, color, religion, sex, and national origin. The
Guidelines provide a framework for determining the proper use of selection procedures.

Recognition of the relevance of the documents cited above is evidenced by the
fact that the NYS-DCS claims that it relied upon or was guided by all three documents in

6

developing the Promotion Battery[1]. Unfortunately this claim is not supported by facts in

this case. The Uniform Guidelines constitute the Federal Requirements that are most

relevant from a legal perspective in assessing the validity of the Promotion Battery. The

Guidelines have been given considerable deference by the Courts in Title VII

discrimination cases. The NYS-DCS indicates that the Promotion Battery was developed

and used based on a content validation model.[2] Therefore the requirements of the

Uniform Guidelines with regard to demonstrating content validity were used as the

primary basis for evaluating the validity of the Promotion Battery. Section 14C4 of the

Guidelines states the following requirements for demonstrating content validity:

> "For any selection procedure measuring a knowledge [sic], skill, or ability
> the user should show that (a) the selection procedure measures and is a
> representative sample of that knowledge, skill or ability; and (b) that
> knowledge, skill or ability is used in and is a necessary prerequisite to
> performance of critical or important work behavior(s). In addition, to be
> content valid, a selection procedure measuring a skill or ability should
> either closely approximate an observable behavior or work product. If a
> test purports to sample a work behavior or to provide a sample of a work
> product, the manner and setting of the selection procedure and its level
> and complexity should closely approximate the work situation. The closer
> the content and the context of the selection procedure are to work samples
> or work behaviors, the stronger is the basis for showing content validity.
> As the content of the selection procedure less resembles a work behavior,
> or the setting and manner of the administration of the selection procedure
> less resemble the work situation, or the result less resembles a work
> product, the less likely the selection procedure is to be content valid."

Job Analysis

One of the most important steps in demonstrating the content validity of a test

battery or selection procedure is to determine the composition of the job or jobs for which

the test battery is to be used. A job analysis is the process by which this information is

---

[1] Hite Deposition Exhibit 1, p. 10

[2] Hite Deposition Exhibit 1, p. 9

obtained. A job analysis is a detailed examination of a job to determine what is done, how it is done, the context in which it is done, as well as the knowledge, skills, abilities and personal characteristics (KSAs) required to perform the job successfully.

Proper job analysis is a critical requirement to meet professional standards for content-oriented validation. A job analysis establishes the linkage between job tasks and KSAs, and forms the basis for linking a selection device to those KSAs, thus linking the selection device to the job. The importance of job analysis to content validation of a selection device is established in the *Principles*, the *Standards* and the *Guidelines*.

The particular sections in these documents that address the importance of job analysis methodology, procedures, and data to content-oriented validation are presented below:

*Society of Industrial and Organizational Psychology, Inc. (2003). Principles for the*

*Validation and Use of Personnel Selection Procedures (4th edition). Bowling Green, OH.*

Page 6: "Content-Related Evidence: Test content includes the questions, tasks, format, and wording of questions, response formats, and guidelines regarding administration and scoring of the test. Evidence based on test content may include logical or empirical analyses that compare the adequacy of the match between test content and work content, worker requirements, or outcomes of the job."

Page 10: "Purposes for Conducting an Analysis of Work: There are two major purposes for conducting an analysis of work. One purpose is to develop selection procedures. Part of this process is an analysis of work that identifies worker requirements including a description of the general level of ability, skill, knowledge or other characteristics needed. Such an analysis of work would determine the characteristics workers need to be successful in a specific work setting, or the degree to which the work requirements are similar to requirements for work performed elsewhere. The other purpose is to develop or identify criterion measures by assembling the information needed to understand the work performed, the setting in which the work is accomplished, and the organization's goals."

Page 6: "There is no single approach that is the preferred method for the analysis of work. The analyses used in a specific study of work are a function of the nature of the work, current information about the work, the organizational setting, the workers themselves, and the purpose of the study. Understanding the organization's requirements or objectives is important when selecting an appropriate method for conducting an analysis of work. The choice of method and the identification of the information to be gathered by that method should include the relevant research literature."

American Educational Research Association (1999).  Standards for Educational and

Psychological Testing. Washington, DC.

Standard 14. 8: "Evidence of validity based on test content requires a thorough and explicit definition of the content domain of interest. For selection, classification and promotion, the characteristics of the domain should be based on job analysis."

Comment: "In general, the job content domain should be described in terms of job tasks or worker knowledge, skills, abilities, and other personal characteristics that are clearly operationally defined so that they can be linked to test content, and for which job demands are not expected to change substantially over a specified period of time. Knowledge, skills, and abilities included in the content domain should be those the applicant should already possess when being considered for the job in question."

Standard 14.9: "When evidence of validity based on test content is a primary source of validity evidence in support of the use of a test in selection or promotion, a clear link between test content and job content should be demonstrated."

Comment: "For example, if the test content samples job tasks with considerable fidelity (e.g., actual job samples such as machine operations) or, in the judgment of experts, correctly simulates job task content (e.g., certain assessment center exercises), or sample specific job knowledge required for successful job performance (e.g., information necessary to exhibit certain skills), then content-related evidence can be offered as the principal form of evidence of validity. If the link between the test content and the job content is not clear and direct, other lines of validity evidence take on greater importance."

Standard 14: "When evidence of validity based on test content is presented, the rationale for defining and describing a specific job content domain in a particular way (e.g., in terms of tasks to be performed or knowledge, skills, abilities, or other personal characteristics) should be stated clearly.

Equal Employment Opportunity Commission (1978).  Uniform Guidelines on Employee

Selection Procedures. Washington, DC.

Section 14 (A): "Validity studies should be based on review of information about the job. Any validity study should be based upon a review of information about the job for which the selection procedure is to be used. The review should include a job analysis…" Section 14 (C2), Job Analysis for Content Validity: "There should be a job analysis which includes an analysis of the important work behavior(s) required for successful performance and their relative importance and, if the behavior results in work product(s), an analysis of the work product(s). Any job analysis should focus on the work behavior(s) and the tasks associated with them. If work behavior(s) are not observable, the job analysis should identify and analyze those aspects of the behavior(s) that can be observed and the observed work products. The work behavior(s) selected for measurement should be critical work behavior(s) and/or important work behavior(s) constituting most of the job."

The New York State Department of Civil Service failed to conduct a proper job analysis with regard to the positions for which the Promotion Battery was used. Mr. Paul Kaiser, Director of the Testing Services Division, New York State Civil Service testified that the Promotion Battery was used to make promotion decisions for supervisory titles at Grade 23 levels and at the Grade 27 levels.[3] Examination announcements indicate that the Promotion Battery was used for promotions to Grades 27 through 38 and M-2 through M-8.[4] Mr. Ray Mullin, the former Assistant Director of Testing Services under Mr. Kaiser, testified that starting in 1996 the Promotion Battery was used for 1600 to 1700 job titles.[5] In its responses to Plaintiffs first set of interrogatories, the Defendant indicates that the Promotion Battery was used for approximately 1000 positions. Clearly the Promotion Battery was used for a broad array of managerial positions throughout New York State Government. This means that the job analysis must support such broad use.

The job analysis effort by the New York State Civil Service consisted of two steps.[6] First, Department staff reviewed previous examinations for supervisory and managerial positions to determine managerial competencies that had been included on

---

[3] Deposition of Paul Kaiser, pp. 14-15
[4] Announcement No. 07-001 (Bates No. 7981)
[5] Deposition of Ray Mullin, p.16
[6] Deposition of Patricia Hite, Exhibit 1 pp.13-14

those examinations. They did not actually study, observe or otherwise examine the actual work of a single manager. Second, they borrowed a list of managerial competencies that had been identified in a study conducted by the U.S. Federal Government and presented that list to managers from the State of New York in an attempt to determine whether these competencies were applicable to positions in New York State.

It should be noted that the study conducted by the Federal Government did not include a single manager from the State of New York nor is there any indication that it was intended to be applicable to any managerial position in the State of New York. The NYS-DCS never established the degree of similarity, if any, between the positions studied by Federal Government and the state positions covered by the Promotion Battery.

In order to gauge just how deficient the Defendant's efforts at job analysis were one need only compare their efforts with the requirements of the Uniform Guidelines and the standards of accepted professional practice.

As an example, the NYS-DCS failed to identify the important work behaviors in each of the approximately 1000 positions covered by the Promotion Battery (based on their estimates), as required by section 14A of the Uniform Guidelines. In addition, NYS-DCS failed to identify the characteristics workers needed to be successful in the specific work settings covered by all of the positions for which the Promotion Battery was used in accordance with the Principles. Finally, the NYS-DCS failed to demonstrate a clear link between test content and job content for each or even the majority of the approximately 1000 positions covered by the Promotion Battery.

By failing to identify the specific tasks and the knowledge, skills and abilities needed to perform them for all positions covered by the Promotion Battery, the NYS-

11

DCS could not identify the context in which the work was performed and the level and form of the competencies required. As an example, the NYS-DCS identified written communication as one of the competencies the Promotion Battery was designed to measure. However, the level and form of written communication required for a position such as Associate Attorney is quite different from that required for Fish Culturalist. Without identifying the tasks associated with each position, the NYS-DCS could not determine the correct form and level of written communication that should be tested for each position. The NYS-DCS indicates the one ability measured by the Promotion Battery was the review and evaluation of written communications. Test items require the candidate to make judgments about aspects of a document such as appropriateness for intended purpose, appropriateness for intended recipient, relevance, completeness, soundness of conclusions, organization, structure, complexity of structure and vocabulary, grammar, tone, impressions conveyed, discretion and conformance with agency policy.[7] In my opinion, development of a document and or exercise that (a) measures such a broad list of competencies and (b) measures them at the appropriate level of difficulty and within an appropriate context that is relevant to and representative of the content of the approximately 1000 different managerial jobs would not be possible even if the NYS-DCS had conducted an appropriate job analysis, which it did not. I am somewhat puzzled and disappointed to see that the NYS-DCS failed to conduct a proper job analysis even though the persons responsible for development of the Promotion Battery were aware of the requirements of the Uniform Guidelines. As an example, Mr. Paul Kaiser testified that he was familiar with the Uniform Guidelines. Mr. Kaiser testified as follows on this point.

---

[7] Kaiser Deposition, Exhibit 35

12

"Q. To your knowledge, is the Department of Civil Service in the State of
New York covered by EEOC guidelines with regard to test development?
A. I believe so." (Kaiser deposition p. 25)

"Q. How were you familiar with EEOC guidelines?
A. They were part of the training that all examiners would go through."
(Kaiser deposition p. 26)

In addition, in 1989, this writer personally conducted three days of training for
NYS-DCS testing staff (as an outside consultant) that included the subject of job
analysis.[8] Be that as it may, the job analysis conducted by the NYS-DSC was wholly
inadequate to support the content validity of the Promotion Battery.

## Test Development

The NYS-DCS took inadequate job analysis information and attempted to solicit
the assistance of subject matter experts (SMEs) from within civil service to develop the
test questions and problems that eventually made up the Promotion Battery. Given that
the Promotion Battery was used for a wide variety (again approximately 1000) different
positions, it would have been necessary to sample from this entire pool of employees to
obtain a sample sufficiently knowledgeable about the level and form of competencies that
should be assessed. Instead, the NYS-DCS typically used a sample of less than 20
managers from no more than 13 agencies of its 80 or so agencies to assist in development
of the Promotion Battery in any given year.[9] Therefore, the overwhelming proportion of
the agencies were not represented at all.

In addition, the method(s) in which the SMEs were used was inappropriate to
ensure a valid exam even if it had been based on an appropriate job analysis. Specifically,

---

[8] See Appendix D for an outline of the topics covered in the training.
[9] See Durovic Deposition, Exhibit 10 and Mullin Deposition, Exhibits 44, 47, 50 and 51

13

the SMEs were not allowed to actually engage in determining the appropriate format and

content of the test questions and problems presented on the Promotion Battery. Mr. Paul

Kaiser testified as follows with regard to the input SMEs were allowed to provide:

"Q. Were the subject matter experts asked to do anything between the
meetings, prepare any materials, speak with anyone, or do anything else
that you can remember?

A. No.

Q. To your best recollection, what was the purpose of these meetings?
A. To provide advice, guidance, ideas in developing the test material; to
provide their expert judgment on the accuracy, appropriateness of the
material; to reach consensus on the answers that were appropriate and
inappropriate responses to the test stimuli.

Q. Did the subject matter experts develop any of the test material, to your
knowledge?

A. Can you clarify what you mean by did they develop?

Q. Write questions, write simulations?

A. No.

Q. Who did that?

A. Betsy and I."

(Kaiser deposition, p. 55-56)

In my experience, it is vital the SMEs be allowed to have full input not only in

determining the content of the exams designed to measure competencies across a wide

variety of jobs but also to have input into the most appropriate method of presenting test

material (e.g., visually, orally, or in written form but embedded within the appropriate

context). The NYS-DCS simply decided on its own the format in which test materials

would be presented and required the SMEs to work within those constraints. This is

extremely important when considering the fact that inappropriate format and, or content

can increase adverse impact. An example of the difficulties caused by the lack of input

from an appropriate sample of SMEs is fact that some managers within the New York

State Civil Service objected to the use of the Promotion Battery for positions in their

agencies on the grounds that it was not valid for testing the knowledge, skills and abilities

14

needed to perform the duties of certain jobs.[10] Managers also objected to the weight given

to the Promotion Battery in comparison with other components of the selection process.

## Adverse Impact

The Uniform Guidelines stipulate that a selection procedure is considered

discriminatory if it is not valid and it has adverse impact. Even if a selection device is

valid it may still be discriminatory if there is an equally valid alternative that has less

adverse impact. Section 4A of the Uniform Guidelines states:

> Information on Impact—A. Records concerning impact. Each user should
> maintain and have available for inspection records or other information
> which will disclose the impact which its tests and other selection
> procedures have upon employment opportunities of persons by identifiable
> race, sex, or ethnic group as set forth in subparagraph B below in order to
> determine compliance with these guidelines.

NYS-DCS failed to maintain records as to the impact of the Promotion Battery on

protected minorities (e.g., Blacks and Hispanic American) despite clear evidence that the

Promotion Battery almost surely was producing such impact. Mr. Paul Kaiser testified

that he had not done an adverse impact analysis on the Promotion Battery until

approximately six months prior to his deposition which was held on June 21, 2007. Mr.

Kaiser testified as follows:

> "Q. Did you ever do such 80 percent rule analysis with regard to the
> battery test?
> A. Yes.
> Q. When?
> A. Within the last six months.
> Q. Did you ever do it before the last six months?
> A. No.

---

[10] See for example, Mullins Deposition, Exhibit 48

Q. Were you ever asked to do it before the last six months?
A. No"
(Kaiser deposition, p. 28)

Mr. Kaiser failed to conduct adverse impact analyses even though the Promotion

Battery was used from 1996 to 2007. This is particularly troubling since Mr. Kaiser

testified that he had conducted adverse impact analyses for tests that he developed prior

to 1996. He testified as follows on this point:

Q. With regard to any of the tests that you had developed before 1996, did
you ever evaluate those tests with respect to their impact on protected
groups?
A. Yes
Q. Was that part of your duty and responsibility?
A. Yes." (Kaiser deposition p. 27)

Given that Mr. Kaiser was involved in the actual development of major portions

of the Promotion Battery, it is puzzling that he did not attempt to determine the adverse

impact of the Battery. This was the case, even though the NYS-DCS continuously

conducted analyses on each test item to determine if there were racial differences in

response patterns by race. They found, repeatedly that there were racial differences. Mr.

Kaiser testified as follows with regard to the analyses of racial differences between

blacks and whites on the Promotion Battery.

"Q. So where it says "number of items rekeyed," this is after the test had
been administered contemplating the next test; is that right?
A. No
Q. No. Okay. Is it –
A. Contemplating the final scoring of this test.
Q. Okay. So this relates to a change in the way the already-administered
test will be scored.
A. That's correct.
Q. And do you have any recollection – it says at the top, "Examiner E.
Kaido, P. Kaiser." Do you have any memory this?

16

A. Yes.

Do you have any memory of what stimulated the change or changes?
A. Yes.

Q. What? Tell me what.

A. It would have come from an analysis of the candidate response data to each of the options in the simulation, a discussion of the response data and the simulation problems with the development team in-house, a discussion of the candidate response data and the problem with the subject matter experts, and a meeting with the sensitivity review panels after the test was administered; and from those discussions, we would make recommendations to change the scoring key." (Kaiser deposition, pp. 121-122)

"Q. And when you say the remaining 28 options at the bottom of that paragraph, 19 had Deltas favoring white candidates and nine had Deltas favoring black candidates. What does the term "Deltas" there mean?
A. Again, it's an indicator of the proportion of each group selecting each item. And if it was a positively weighted item and more whites selected it than blacks, then it favored whites. It a greater proportion of blacks selected a positively weighted item, then it—the selection of that item favored the black group.

The positive and negative comments on the Delta sheet, where it indicates a negative Delta favors blacks, has to be switched when you deal with items that are negatively weighted. So in any event, of these 28 items, 19 of them, whites did better than blacks; nine of them, blacks did better than whites." (Kaiser deposition p. 185)

In point in fact, the NYS-DCS was aware during the entire period that the

Promotion Battery was in use (a period from 1996 to 2007), that Blacks, Whites and

Hispanics were responding differently to a significant proportion of the items in the

Battery. Yet, the NYS-DCS failed to assess the adverse impact of the Promotion Battery

on these racial groups as required by the Uniform Guidelines.

## Conclusions

I have made the following conclusions based on the documents examined and the testimony that I have read.

- The Promotion Battery used by the New York State Department of Civil Service from 1996 to 2007 has not been demonstrated to be valid

- The New York State Department of Civil Service failed to properly assess and monitor the adverse impact of the Promotion Battery as required by the Uniform Guidelines on Employee Selection Procedures.

- The New York State Department of Civil Service failed to search for alternative methods of using the Promotion Battery even though they knew that test items produced differential results by race.

- No business necessity was established for using the Promotion Battery in its current form.

Respectfully Submitted January 30, 2008:

James L. Outtz, Ph.D.

Appendix A
Curriculum Vitae

# VITAE

## James L. Outtz, Ph.D.

**Outtz & Associates**
**Suite 800**
**816 Connecticut Avenue, N.W.**
**Washington, D.C.  20006**

Tel:  202-822-3882
Fax: 202-822-3884

May 2007

# JAMES L. OUTTZ, Ph.D.

## Education

**Ph.D.**
**Industrial/Organizational**
**Psychology**

University of Maryland, College Park Maryland
December 1976

**M.S.**
**Industrial Psychology**

Northeast Louisiana University, Monroe, Louisiana
January 1972

**B.A.**
**Sociology**

Northeast Louisiana University, Monroe, Louisiana
May 1969

## Professional Affiliations

**American Psychological Association**

Fellow – Society for Industrial and Organizational Psychology

Member - Division of Evaluation and Measurement

Member – Committee On Psychological Tests and Assessment (1990 through 1992)

**Recent Honors**

Invited by the Equal Employment Opportunity Commission to participate in a panel discussion to brief the Commission and interested parties on current employment testing policies and trends, the effect of employment tests on racial and ethnic minorities and how to design selection procedures that are effective without respect to race color or other protected bases.

Invited to give a presentation on adverse impact at the annual conference of People Assessment in Industry, Pretoria, South Africa

Selected by the Board of Scientific Affairs of the American Psychological Association to give a one-hour Master Lecture in applied psychology at the 2007 American Psychological Association Convention in San Francisco, California.

**American Psychological Association Division 14**
**The Society for Industrial and Organizational Psychology (SIOP)**

Chair – M. Scott Meyers Award Committee

**Past Member:**

Ad Hoc Committee on Revision of the SIOP Principles

Ad Hoc Committee on Revision of the Uniform Guidelines

Program Committee for the Ninth Annual Conference

External Affairs Committee

**The American Educational Research Association**

Member

**The International Personnel Management Association**

Member

**Society for Human Resource Management**

Member

# Public Service

**National Academy of Sciences, National Research Council**

Member – Committee to Study FAA Aviation Safety Inspector Staffing Standards (October 2004 to October 2006)

Member – Committee on Workforce Needs in Information Technology (1999 to 2001)

Member - Board on Testing And Assessment, Commission on Behavioral and Social Sciences (1992 through 1996)

# Publications

Outtz, J. Adverse Impact, Implications for Organizational Staffing and High Stakes Selection, Lawrence Erlbaum, under contract.

Outtz, J., (2005) Race Discrimination Cases: Common Themes. In Employment Discrimination Litigation: Behavioral, Quantitative and Legal Perspectives, Landy, F. (Ed) New York, New York, Jossey – Bass/Pfeiffer.

Outtz, J. and Landy, F. (2005) Some Concluding Thoughts. In Employment Discrimination Litigation: Behavioral, Quantitative and Legal Perspectives, Landy, F. (Ed) New York, New York, Jossey – Bass/Pfeiffer.

Cascio, W., Goldstein, I., Outtz, J., and Zedeck, S. (2004) Technical Issues in Staffing Decisions. In Test Score Banding in Human Resource Selection: Legal, Technical, and Societal Issues, Aguinis, H. (Ed.) New York, New York, Quorum Books.

Outtz, J. (2004) The Psychology and Management of Work Force Diversity. A Book Review. Personnel Psychology. Vol. 57 No. 4 1041-1044

Outtz, J., (2002) The Role of Cognitive Ability Tests in Employment Selection. Human Performance Vol. 15 No. (½) 161-171.

Campion, M., Outtz, J., Zedeck, S., Schmidt, F., Kehoe, J., Murphy, K., and Guion, R. (2001) The Controversy over Score Banding in Personnel Selection: Answers to Key Questions. Personnel Psychology, Volume 54, No. 1, 149-185.

Outtz, J. (1998) Affirmative Action: A Review of Psychological and Behavioral Research. A Book Review. Personnel Psychology, Volume 51, No. 1, 216-219.

Outtz, J. (1998) Testing Medium, Validity and Test Performance. In Beyond Multiple Choice: Evaluating Alternatives to Traditional Testing for Selection, Hakel, M. (Ed.) Hillsdale, New Jersey, Erlbaum Associates, Inc.

Outtz, J. (1997) Developing and Implementing Fair Systems of Assessment. Paper prepared for the Committee on Access Diversity and Civil Rights, National Skill Standards Board, Washington, DC

Zedeck, S., Cascio, W., Goldstein, I., and Outtz, J. (1996) An Alternative to Top-down Selection. In Fair Employment strategies In Human Resource Management, Barrett, R. (Ed.) Westport, Connecticut, Quorum Books.

Cascio, W., Zedeck, S., Goldstein, I., and Outtz, J. (1995) Selective Science or Selective Interpretation. American Psychologist Vol. 50, No. 10, 881-882.

Cascio, W., Goldstein, I., Outtz, J., and Zedeck, S., (1995) Twenty Issues and Answers about Sliding Bands. Human Performance Vol. 8, No. 3, 227-242.

Outtz, J. (1992) The Sliding-band Referral Method: An Innovative Procedure for Selecting or Promoting Employees. Employment Testing, Vol. 1, No. 10, 169-173.

Zedeck, S. Outtz, J. Cascio, W., and Goldstein, I. (1991) Why Do 'Testing Experts Have Such Limited Vision? Human Performance Vol. 4, No. 4 297-308.

Cascio, W. Outtz, J. Zedeck, S. and Goldstein, I., (1991) Statistical Implications of Six Methods for Establishing Cutoff Scores in Personnel Selection. Human Performance Vol. 4, No. 4, 233-64.

Outtz J., (1977) Racial Bias As a Contaminant of Performance Evaluation. Research Report #15, Contract #N00014-75-C-0884, Personnel and Training Research Programs, Science Division, Office of Naval Research, Arlington, Virginia.

"Alternative Uses of Traditional Selection Procedures" (manuscript in preparation).

### *Current Employment*

Industrial Psychologist in Private Practice

### *Current and Previous Consultant Activities*

| | |
|---|---|
| **Consultant**<br>April 2007 to<br>Present | **Weil, Gotshal & Manges LLP**<br>**New York, New York** |

Retained as expert witness for the defendant in the case of McReynolds v. Merrill Lynch & Co., LLP (Case No. 05C-6583 (N.D. Ill). The case involves claims of race discrimination against African American Financial Analysts with regard to compensation, promotion and other human resources practices.

| | |
|---|---|
| **Consultant**<br>May 2006 to<br>December 2006 | **Washington Suburban Sanitary Commission**<br>**Laurel, Maryland (WSSC)** |

Testified as expert witness for the defendant in the case of Phillips v. Washington Suburban Sanitary Commission (Case No. 04-12879). The case involved current and former employees who sued WSSC alleging among other things that they were discriminated against in their compensation on the basis of race and ethnicity. The jury verdict was for the defendant with regard to the issues about which I testified.

| | |
|---|---|
| **Consultant**<br>January 2006 | **City of Bridgeport**<br>**Bridgeport, Connecticut** |

Testified as expert witness for the defendant in the case of John Bolton et al. v. City of Bridgeport (3:04CV00670 (JBA). The case involved a claim of racial discrimination by non-minority applicants for the position of firefighter. Plaintiffs contested an oral interview that was part of the selection process. The court ruled for the defendant.

| | |
|---|---|
| **Consultant**<br>July 2005 to April<br>2006 | **Milberg Weiss Bershad & Schulman LLP**<br>**New York, New York** |

Retained as expert witness for the plaintiff in the case of Frank Warren, et al. v. Xerox Corporation. The case involved claims of race discrimination with regard to territory assignment, compensation and promotion for current and former sales employees. The case was settled prior to trial.

**Consultant**
October 2004 to
Present

**Alcoa Inc.**
**Pittsburgh, Pennsylvania**

Retained to develop an entry-level test for apprentice positions at
the Company's Cleveland, Ohio facility.

**Consultant**
July 2004 to Present

**The Popham Law Firm, P.C.**
**Kansas City Missouri**

Retained as expert witness for the plaintiff in the case of Shirley
Williams vs. Sprint/United Management Company. The case
involves claims of age discrimination with regard to a reduction-in-
force carried out by the defendant.

**Consultant**
April 2004 to
Present

**Weiner & Katz LLC**
**Livingston, New Jersey**

Retained as expert witness for the plaintiff in the case of Bishop et.
al. v State of New Jersey et. al. This case involves a claim of racial
discrimination with regard to a promotion examination for the
position of fire captain.

**Consultant**
April 2004 to
November 2005

**Lieff, Cabraser, Heimann**
**& Bernstein, LLP**
**San Francisco, California**

Retained as expert witness for the plaintiff in the case of Gonzalez
et al. v. Abercrombie & Fitch Stores, Inc., A&F California, LLC
and A&F Ohio, Inc. The case involved a claim of racial
discrimination in hiring. The case was settled prior to trial.

**Consultant**
March 2004 to
June 2004

**U.S. Department of Commerce**
**Office of General Counsel**
**Washington, DC**

Retained as expert witness for the defendant in the case of Janet
Howard v. Donald L. Evans, Secretary U.S. Department of
Commerce. The case involves a claim of racial discrimination by
African American employees with regard to the Department of
Commerce performance appraisal system. I was retained to
evaluate the adequacy of plaintiff expert's report.

| | |
|---|---|
| **Consultant** | **City of Chicago** |
| **January 2004** | **Chicago, Illinois** |

Testified as expert witness for the defendant in the case of Arthur Lewis Jr. et al., v. City of Chicago (United States District Court Northern District of Illinois, Eastern Division, Case No. 98 C 5596). This case involved a claim of racial discrimination in the hiring of entry lee firefighters. The District Court ruled in favor of the plaintiff.

| | |
|---|---|
| **Consultant** | **City of Bridgeport** |
| March 2004 | **Bridgeport, Connecticut** |

Testified as expert witness for the defendant in the case of John Bolton v. City of Bridgeport (CV 04-0409828 S). The case involved a claim of racial discrimination by non-minority applicants for the position of firefighter. The court ruled for the defendant.

| | |
|---|---|
| **Consultant** | **Fisher & Phillips LLP** |
| January 2003 to | **Atlanta, Georgia** |
| October 2003 | |

Retained to conduct an evaluation of the human resources practices of Matsushita Communication Industrial Corporation of U.S.A. ("MCUSA") relating to pay and promotion for its hourly, salaried-nonexempt, supervisory and management employees.

| | |
|---|---|
| **Consultant** | **Paul, Weiss, Rifkind,** |
| November 2002 to | **Wharton & Garrison** |
| Present | |

Retained as expert witness for the defendant in the case of Gutierrez, et al. v. Johnson & Johnson, Inc. The case involves claims of racial discrimination by African American and Hispanic salaried employees. The District Court ruled for the defendant.

| | |
|---|---|
| **Consultant** | **City of Chicago** |
| November 2002 | **Chicago, Illinois** |

Testified as expert witness for the defendant in the case of Horan et al. v. The City of Chicago. I offered an opinion regarding the proper interpretation and use of the results of an entry-level firefighter examination. The District Court ruled for the defendant.

**Consultant**
April 2002 to
March 2003

**Publix Super Markets, Inc.**
**Lakeland, Florida**

Retained to provide assistance in the development and validation of modifications to a selection battery for Assistant Department Manager and Department Manager positions.

**Consultant**
April 2002 to
December 2003

**Arent, Fox, Kintner, Plotkin & Kahn, PLLC**
**Washington, D.C.**

Retained as expert for the defendant in the case of Wicks, et al., v. Metso Paper USA. This case involved a complaint of age discrimination by former employees at the Clark Summit facility of the Beloit Company who were not selected for retention by Metso Paper USA after its acquisition of the Clark Summit facility.

**Consultant**
October 2001 to
August 2002

**Epstein Becker & Green, P.C.**
**Washington, D.C.**

Retained as expert witness for the Defendant in the case of Thornton et al., v. ICMA Retirement Corporation. This case involved a complaint of racial discrimination by current and former African American employees.

**Consultant**
**July 2001 to**
**December 2001**

**Cohen, Milstein, Hausfeld & Toll, P.L.L.C.**
**Washington, D.C.**

Retained as expert for the plaintiff in the case of Donaldson et al. v, Microsoft (No. C00-1684-P). This case involved claims of racial discrimination by African American employees who alleged among other things discrimination in compensation, promotion as well as retaliation.

**Consultant**
February 2001 to
December 2002

**City of San Francisco**
**San Francisco, California**

Retained to develop and validate a Firefighter examination for the City of San Francisco Fire Department.

**Consultant**
February 2001 to
Present

**Bridgeport Civil Service Commission**
**Bridgeport, Connecticut**

Retained to develop and validate an examination for the position of Firefighter.

**Consultant**
January 2001 to
October 2003

**Thelen, Reid and Priest, LLP**
**Washington, D.C.**

Retained to monitor, review, and provide input to the Bureau of
Alcohol, Tobacco, and Firearms regarding the development and
validation of a promotion process for First-Level Supervisor positions.

**Consultant**
January 2000 to
December 2003

**Gordon, Silberman, Wiggins and Childs**
**Birmingham, Alabama**

Retained as expert for the plaintiff in the case of Johnny Reynolds
et al. v Alabama Department of Transportation (Case No. CV 85-T-
655-N). This case involved monitoring a consent degree entered by
plaintiff and defendant regarding the selection, and promotion
practices of the Alabama Department of Transportation

**Consultant**
January 2000 to
December 2001

**Spriggs and Davis, PA**
**Tallahassee, Florida**

Retained as expert for the plaintiff in the case of Middleton, et al.,
v. Publix Supermarkets, Inc.

**Consultant**
March 2000 to
December 2001

**Bridgeport Civil Service Commission**
**Bridgeport, Connecticut**

Retained to develop and validate promotion examinations for the
positions of Police Sergeant and Police Detective.

**Consultant**
July 1999 to
September 2001

**City of San Francisco**
**San Francisco, California**

Retained to develop an Officer Candidate Promotion System for the
City of San Francisco Fire Department.

**Consultant**
June 1999 to
January 2003

**CSX Transportation**
**Jacksonville, Florida**

Retained to validate tests and selection procedures used for hiring
and promotion in several departments including Train and Engine
Service, Yardmaster, Dispatcher, Mechanical Operations, and
Engineering.

**Consultant**
June 1999 to
August 2002

**NAACP Legal Defense Fund**
**Los Angeles, California**

Retained as expert for the plaintiffs in the case of Rios, et al., v. Regents, et al.  Retained to evaluate the admissions procedure of the University of California at Berkeley.

**Consultant**
December 1998 to
Present

**Federal Deposit Insurance Corporation**
**Washington, D.C.**

Retained to provide expert services to the Legal Division of the Federal Deposit Insurance Corporation (FDIC) regarding employment discrimination matters. Responsibilities include conduct of validation studies regarding selection and promotion procedures used by the organization.

**Consultant**
December 1998 to
January 2000

**Vladeck, Waldman, Elias and Engelhard, P.C.**

Retained as expert for the plaintiffs in the case of Rodolico v. Unisys Corporation. Responsibilities included an evaluation of a reduction in force carried out by Unisys with regard to engineers employed by Company.

**Consultant**
August 1998 to
December 2001

**City of San Francisco**
**San Francisco, California**

Retained to develop a Firefighter Cadet Program to replace the Firefighter selection procedures used in the past. Project included the development and validation of screening procedures for entering the program, program content, and methods of evaluating performance.

**Consultant**
July 1998 to
January 2001

Arter and Hadden
Washington, D.C.

Retained as expert witness for the defendant in the case of Beebe, et al., v. the National Association of Social Workers Inc. (NASW). Responsibilities included evaluation of the procedures used by the NASW to select persons for senior management positions.

**Consultant**
June 1998 to
Present

**Arent, Fox, Kintner, Plotkin and Kahn**
**Washington, D.C.**

Retained as expert for the defendant, INA Bearing Company Inc.,
in response to a Show Cause Notice from the U.S. Department of
Labor, Office of Federal Contract Compliance. Responsibilities
include an analysis of the Company's selection procedures for
specific craft positions.

**Consultant**
March 1998 to
Present

**Vladeck, Waldman, Elias, and Engelhard, PC**
**New York, New York**

Retained as expert for the plaintiff in the case of Lott v.
Westinghouse. Responsibilities include evaluation of the
performance appraisal and promotional procedures of the
Westinghouse Company.

**Consultant**
November 1997 to
January 2001

**Perkins Coie**
**Seattle, Washington**

Retained on behalf of The Boeing Company to provide
recommendations regarding the validity, fairness, and operational
use of the Company's First-Level Management Selection System.

**Consultant**
October 1997 to
January 1999

**Hermina Law Group**
**Laurel, Maryland**

Retained as expert for the plaintiff in the case of Richard v. Bell
Atlantic Corporation, et al. Responsibilities include review of the
testing and promotion procedures of the Bell Atlantic Corporation.

**Consultant**
July 1997 to
November 1997

**National Skills Standards Board**
**Washington, D.C.**

Retained to prepare a paper on alternative methods of assessing
national skills standards.

**Consultant**
May 1997 to
June 1997

**Gordon, Silberman, Wiggins and Childs**
**Birmingham, Alabama**

Testified as expert witness for the plaintiff in the case of Moore, et al., v. Norfolk Southern. My testimony addressed the appropriateness of using validity generalization as a strategy for establishing the job relatedness of cognitive ability tests used in a clinical assessment process, and the feasibility of alternatives to the cognitive ability tests used by the defendant. I demonstrated that there were alternatives to the defendant's cognitive ability tests that had less adverse impact and equivalent validity.

**Consultant**
June 1996 to
June 1997

**The George Washington University**
**Washington, D.C.**

Retained to provide consultation with regard to implementation of a reduction in force (RIF) at the George Washington University Medical Center. Responsibilities included examination of implementation decisions from a psychometric standpoint.

**Consultant**
January 1996 to
May 1997

**Vladeck, Waldman, Elias, and Engelhard. P.C.**
**New York, New York**

Retained as expert for the plaintiff in the case of Krueger v. N.Y. Telephone. Retained to examine the report of defendant's expert regarding a downsizing plan implemented by the New York Telephone Company. Responsibilities included evaluation of the conclusions in the report, providing assistance in preparing for defendant expert's deposition, and preparing a rebuttal report.

**Consultant**
December 1995 to
March 1999

**Williams and Connolly**
**Washington, D.C.**

Retained to evaluate the work necessary to validate certain CSXT Railroad Company employment practices in connection with pending litigation.

| | |
|---|---|
| **Consultant**<br>November 1995 to<br>May 1997 | **City of Columbus**<br>**Columbus, Ohio** |

Retained to provide consultant services to complete a job analysis for the position of Firefighter and, if appropriate, make recommendations to modify the City's testing method. Responsibilities included meeting with key City personnel regarding the project; providing job analysis training to Civil Service Commission staff; reviewing job analysis data; providing written comment to the Civil Service Commission regarding acceptability of the work, and recommending possible modifications to the Firefighter examination.

| | |
|---|---|
| **Consultant**<br>August 1995 to<br>June 2001 | **United States Department of Justice**<br>**Federal Bureau of Investigation**<br>**Washington, D.C.** |

Retained to serve on a three-person Review Committee, under the terms of a settlement agreement, to monitor and comment upon the proposals and recommendations of experts hired by the FBI. Responsibilities include evaluation of proposals and recommendations of experts with regard to promotion practices of the Agency specifically relating to the Career Development Program, Performance Appraisal Report System, Management Appraisal Program, and Initiation of Disciplinary Proceedings.

| | |
|---|---|
| **Consultant**<br>June 1995 to<br>January 2000 | **O'Melveny and Myers**<br>**Washington, D.C.** |

Retained as expert for the defendant, Ford Motor Company, in employment discrimination litigation. Responsibilities include performing statistical and other analyses of employment data of the Ford Motor Company and Ford Motor Credit.

| | |
|---|---|
| **Consultant**<br>March 1995 to<br>April 1997 | **Cohen, Milstein, Hausfeld and Toll**<br>**Washington, D.C.** |

Retained as expert for the plaintiff in the case of Roberts v. Texaco, Inc. Responsibilities included review of Texaco's selection and promotion policies and practices to determine whether they are excessively subjective and inadequately audited or monitored and, therefore, are likely to have an adverse impact on African American employees.

**Consultant**
February 1995 to
May 1995

**Koskoff, Koskoff and Bieder**
**Bridgeport, Connecticut**

Retained as expert witness for the intervening defendants in the case of Burke, et al., v. Bridgeport Civil Service Commission, et al. I testified regarding the development and validation of a written examination for Police Officer and the use of a banding procedure to interpret test scores.

**Consultant**
December 1993 to
December 1994

**City of Columbus Civil Service Commission**
**Columbus, Ohio**

Retained to advise the Civil Service Commission with respect to professionally acceptable strategies for test grading and application certification. Also retained to prepare a position paper on "Banding" as a selection strategy and provide recommendations to City officials.

**Consultant**
October 1993 to
September 1995

**Potomac Electric Power Company**
**Washington, D.C.**

Retained to (a) develop selection procedures for all first-level supervisor positions, (b) develop alternative selection procedures for entry-level positions, and (c) evaluate and revise the qualification card program which determines progression into skilled craft positions.

**Consultant**
September 1993 to
Present

**City of Chicago**
**Chicago, Illinois**

Retained to develop and validate a written examination for the position of Firefighter. The examination is administered to approximately twenty-five thousand applicants. It incorporates audiovisual technology as well as nontraditional item format designed to enhance validity and reduce adverse impact.

**Consultant**
June 1993 to
March 1995

**City of Detroit**
**Detroit, Michigan**

Retained to develop promotion examinations for the positions of Police Lieutenant, Sergeant, and Investigator in the Detroit Police Department.

**Consultant**
February 1992 to
May 1992

**CORE Corporation, Inc.,**
**Berkeley, California**

Retained to work with the firm to develop and validate an entry-level Firefighter examination for the City of San Francisco.

**Consultant**
January 1992 to
January 2000

**U.S. Department of Justice**
**Federal Bureau of Investigation**
**Washington, D.C.**

Retained to conduct a review and analysis of the Career Development Program for Mid-Level Managers (GS-14 and GS-15) and propose modifications.

**Consultant**
July 1991 to
December 1991

**Arnold and Porter**
**Washington, D.C.**

Retained (with agreement of the Federal Bureau of Investigation) to assist the law firm in preparation for possible litigation on behalf of a class of African American FBI agents who claimed that the FBI discriminated against them on account of race in violation of Title VII of the Civil Rights Act of 1964.

**Consultant**
June 1991 to
January 1995

**East Bay Municipal Utility District**
**Oakland, California**

Designed and developed an entry-level test for apprentice positions in the Plant and Equipment Maintenance Division of the Maintenance Department. The positions included Electrical Worker, Mechanical Maintenance Worker (including auto mechanic), Carpentry Worker, and Instrument Worker. A new video-based testing format was used to present test information. This format produced greater fidelity between the test and the jobs. Results showed good variance, high reliability, and a significant reduction in test score differences across race, ethnicity, and gender.

**Consultant**
April 1991 to
January 1996

**United States Department of Justice**
**Civil Rights Division**
**Washington D.C.**

Retained as expert witness for the plaintiff in the case of United States v. State of New Jersey (CV 950-73) to review validation evidence, determine whether fire service tests are job-related, and possibly testify regarding findings.

**Consultant**
May 1992 to
June 1998

**United States Department of Justice**
**Civil Rights Division**
**Washington D.C.**

Retained in the case of United States v. Nassau County to assist in
the design, development, and validation of a new device for use by
Nassau County in the selection of candidates for the position of
Police Officer. Responsibilities also included consultation with
U.S. attorneys assigned to the case, and testimony by deposition
and/or at trial as required.

**Consultant**
February 1991 to
March 1991

**Arent, Fox, Kintner, Plotkin and Kahn**

Retained as expert witness for the defendant in the case of Edward
L. Jolly v. Northern Telecom Inc. (Civil Action No. 90-322-A).
Retained to testify regarding the type of evaluation required for an
industrial psychologist to reach the expert opinion that one
employee is more qualified than another for promotion to a mid-
level management position.

**Consultant**
November 1990

**City of San Francisco**
**San Francisco, California**

Testified as expert witness for the defendant in the case of Officers
for Justice, et al., v. Civil Service Commission of the City and
County of San Francisco. This case involved the contention by
plaintiffs that a system of test score interpretation called "sliding
bands," which I developed, is statistically inappropriate and does
not represent a reasonable alternative to the use of test scores in
strict rank order. The district court ruled for the defendant. The
decision was upheld by the Ninth Circuit Court of Appeals. In its
opinion, the Ninth Circuit Court of Appeals wrote

"... we find that the efforts exerted in this process culminated in a
unique and innovative program which succeeds in addressing past
harms to minorities while minimizing future harmful effects on
non-minority candidates. The successful efforts of all parties and
the district court in reaching this resolution are to be lauded."
(Officers for Justice v. Civil Service Commission of the City and
County of San Francisco, Nos. C-73-0657 RFP and C-77-2884
RFP, N.D. Cal., 21, August 1991)

| | |
|---|---|
| **Consultant**<br>September 90 to<br>September 1991 | **City of Huntington**<br>**Huntington, West Virginia** |

Retained to review the City of Huntington's Civil Service Rules and selection procedures for hiring Police Officers and Firefighters, provide an opinion regarding the validity of the procedures, and determine whether the adverse impact of the procedures could be reduced.

| | |
|---|---|
| **Consultant**<br>April 1990 to<br>April 1991 | **NAACP**<br>**Baltimore, Maryland** |

Retained to provide expert opinion regarding the validity of the College Level Academic Skills Test (CLAST). This test was being used by the State of Florida to measure the achievement level of third-year college students pursuing a teaching career.

| | |
|---|---|
| **Consultant**<br>December 1989 | **City of Bridgeport**<br>**Bridgeport, Connecticut** |

Testified as expert witness for the defendant in the case of Bridgeport Guardians Inc., Hispanic Society Inc., v. City of Bridgeport (Civil Action No. B-89-547, TFGD), U.S. District Court, District of Connecticut. The case involved a charge by the plaintiffs that the promotion process for the position of Police Sergeant in the Bridgeport Police Department had adverse impact against Black and Hispanic candidates, and was not valid. I gave testimony that in my opinion the promotion process did not have an adverse impact against these groups and was valid.

| | |
|---|---|
| **Consultant**<br>December 1989 | **Bramhall, Duncan and Ohm**<br>**Attorneys at Law**<br>**Little Rock, Arkansas** |

Testified as expert witness for the plaintiff in the case of Grady Anthony v. City of Little Rock (Case No. LR-C-88-236), U.S. District Court, Eastern District of Arkansas, Western Division. The case involved a charge by the plaintiff that the procedure used to set the cutoff score on a Police Lieutenant examination was neither valid nor psychometrically correct. The court ruled that while plaintiff's arguments were plausible, and the defendant's promotion procedure was "far from perfect," it did meet the requirements of the Uniform Guidelines and was valid and reasonable.

| | |
|---|---|
| **Consultant**<br>August 1989 to<br>December 1989 | **Congress of the United States**<br>**Office of Technology Assessment**<br>**Washington, D.C.** |

Retained to assist the Office of Technology Assessment in the evaluation of the validity and reliability of paper-and-pencil integrity tests. Assignment included review of validation studies and submission of a written report of my findings.

| | |
|---|---|
| **Consultant**<br>July 1989 to<br>January 1998 | **United States Department of Justice**<br>**Federal Bureau Investigation**<br>**Washington, D.C.** |

Served on a committee with Drs. Robert Guion and Charles Lawshe to review and monitor the development of selection procedures for the positions of Supervisory Fingerprint Examiner and Latent Fingerprint Specialist.

| | |
|---|---|
| **Consultant**<br>May 1989 to<br>June 1989 | **District of Columbia Public Schools**<br>**Washington, D.C.** |

Retained to serve as a member of a technical review committee for the District of Columbia Public Schools' Teacher Content Knowledge Assessment Program. The committee's task was to review the procedures used to develop and validate an entry-level teacher certification test.

| | |
|---|---|
| **Consultant**<br>March 1989 to<br>July 1989 | **United States Department of Labor**<br>**Office of Federal Contract Compliance**<br>**Washington, D.C.** |

Retained to review validation studies from the New York Telephone Company to determine whether they were in compliance with the standards set forth in the Uniform Guidelines on Employee Selection Procedures. The validation studies were conducted to determine the validity and fairness of tests used to screen applicants for the position of Service Representative, as well as positions in entry-level and outside crafts.

**Consultant**
February 1989 to
January 1997

**East Bay Municipal Utility District**
**Oakland, California**

Retained to lead a team of three independent experts (James Outtz, Wayne Cascio, and Sheldon Zedeck) mutually agreed upon by the parties to perform the work of the "Testing and Selection Expert" in the Case of McIntosh, et al., v. East Bay Municipal Utility District. The Team's responsibilities included (a) review of the company's policies, practices and procedures with regard to testing and selection, (b) identification of practices and procedures not in compliance with the Uniform Guidelines on Employee Selection Procedures, and (c) formulation of recommendations to bring such practices and procedures into compliance.

**Consultant**
February 1989 to
January 1996

**Giant Food Inc.**
**Landover, Maryland**

Retained to conduct a criterion-related validation study of the company's selection procedure for the position of Retail Trainee. Retail Trainee is a first-level management position in the company's food stores. Responsibilities included research methodology, as well as reporting the results. Since completing this project, I have been retained to revise the selection procedure and conduct a second validation study.

**Consultant**
December 1988 to
February 1989

**New York State Department of Civil Service**
**Albany, New York**

Developed and conducted two three-day training courses on contemporary approaches to reducing adverse impact in employment selection procedures. The training courses were presented to sixty members of the department's professional test development staff.

**Consultant**
February 1988 to
May 1990

**CORE Corporation**
**San Francisco, California**

Retained to join a committee of testing experts in the development and validation of selection procedures for positions from Firefighter to Battalion Chief in the San Francisco Fire Department. This project included conduct of a job analysis and the development of written tests as well as job simulations.

**Consultant**
January 1988 to
September 1989

**City of Baltimore**
**Baltimore, Maryland**

Retained to provide technical assistance in the development and validation of a promotion procedure for the position of Fire Battalion Chief in the Baltimore Fire Department. Project included conduct of a job analysis and the development of a written test and job simulations.

**Consultant**
October 1987 to
January 1998

**City of New Orleans**
**New Orleans, Louisiana**

Retained to provide technical assistance with regard to the development and validation of selection procedures for the positions of Police Officer and Police Lieutenant, in accordance with an agreement made by the City of New Orleans in the case of Williams v. City of New Orleans (Civil Action No. 73-649). In accordance with the settlement, the City of New Orleans agreed to consult with an Industrial Psychologist designated by plaintiffs.

**Consultant**
October 1987 to
April 1993

**City of New York**
**New York, New York**

Retained to provide technical assistance with regard to the development and validation of selection procedures for the positions of Police Lieutenant and Sanitation Supervisor. The project included conduct of a job analysis as well as development of written tests and job simulations.

**Consultant**
August 1987 to
January 1997

**Amalgamated Transit Union Local 998**
**West Allis, Wisconsin**

Retained to evaluate the Milwaukee County Transit System's selection procedure for the position of Shipper/Receiver and to offer an opinion as to its validity.

**Consultant**
July 1987 to
January 1989

**Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen and Bartnick**
**Detroit, Michigan**

Retained as expert witness for the plaintiff in the case of Hugely, et al., v. General Motors Corporation, U.S. District Court, Eastern District of Michigan (Civil Action No. 83 C.V. 2866 DT). I was retained to evaluate the performance appraisal system used by General Motors for certain managerial positions and to offer an opinion as to its validity.

**Consultant**
May 1987 to
November 1987

**Reiders, Travis, Mussina, Humphreys and Harris**
**Williamsport, Pennsylvania**

Retained as expert witness for the plaintiffs in the case of Johns, et al., v. Phillips ECG v. United Steel Workers of America, et al., U.S. District Court for the Middle District of Pennsylvania. In this case, White female employees charged that the company discriminated on the basis of sex, and violated the Equal Pay Act.

**Consultant**
May 1987 to
June 1987

**Cincinnati Civil Service Commission**
**Cincinnati, Ohio**

Retained to advise the Civil Service Commission as to the merit of an appeal by Jon Sears, an employee of the City of Cincinnati. Mr. Sears claimed that he was denied promotion to a managerial position because of his race. I assisted the Commission in conducting a public hearing regarding the matter and, after reviewing relevant documents and a transcript of the hearing, recommended that Mr. Sears' appeal for promotion be denied.

**Consultant**
February 1987 to
March 1988

**Baltimore City Civil Service**
**Baltimore, Maryland**

Retained as expert witness for the defendant in the case of Thomas DeShields v. Mayor and City Council of Baltimore, et al. (Civil Action No. 3-84-1905). Mr. DeShields charged that the promotion examination process for the position of Battalion Chief in the Fire Department was not valid, had an adverse impact against Blacks, and resulted in disparate treatment against him because of his race. The court ruled for the defendant.

**Consultant**
August 1986 to
January 1987

**Bridgeport Civil Service Commission**
**Bridgeport, Connecticut**

Retained to develop and administer a content-valid promotion procedure for the position of Police Lieutenant, including pre-test study materials, a written test, and work sample exercises.

**Consultant**
August 1986 to
September 1986

**Office of the Associate General Counsel, Personnel Appeals Board**
**U.S. General Accounting Office**
**Washington, D.C.**

Retained as expert witness for the complainant in the case of Chennareddy v. U.S. General Accounting Office. This case involved a charge of racial discrimination in promotions. I reviewed the promotional procedure at issue, prepared a written report, and testified at the Personnel Appeals Board Hearing.

**Consultant**
July 1986 to
October 1990

**Fitzpatrick and Associates**
**Washington, D.C.**

Retained as expert witness for the plaintiff in the cases of James
Short, et al., v. Federal Bureau of Investigation (EEOC Complaint
No. 033-079-X0377) and Bennett, et al., v. Federal Bureau of
Investigation (EEOC Complaint No. 033-085-X5323). I was
retained to review the promotion process for the position of
Fingerprint Specialist in the Latent Fingerprint Section of the FBl
and to offer an opinion as to its validity and fairness.

**Consultant**
June 1986 to
July 1986

**Legal Department, City of Bridgeport**
**Bridgeport, Connecticut**

Retained as expert witness for the defendant in the case of
Association Against Discrimination Inc. v. City of Bridgeport.
The case involved a charge by Black applicants for the position of
Firefighter that rank ordering of candidates on an eligibility list was a
racially discriminatory method of interpreting the scores on a
Firefighter written test. I developed a system of interpreting the test
scores based upon "band scoring" which was acceptable to the
plaintiff, the City of Bridgeport, and the District Court. The Court
ordered that the "banding" system be adopted.

**Consultant**
March 1986 to
January 1988

**Baltimore Civil Service**
**Baltimore, Maryland**

Retained to develop the 1986 and 1987 Police Sergeant promotion
procedures based upon the system of "Targeted Testing" originally
developed and implemented in 1984. This project involved the
continued use of a pre-test study manual for the written test, and
development and implementation of a written test and oral
examination.

**Consultant**
February 1986 to
February 1991

**NAACP Legal Defense and Educational Fund**
**New York, New York**

Retained as expert witness for the defendants in the case of Bushey
v. New York State Department of Correctional Services. My
testimony was to be directed to the question of whether a
promotion procedure, which had less adverse impact than another
and was as valid, should be used in lieu of the procedure with
greater adverse impact.

**Consultant**
January 1986 to
December 1989

**Bridgeport Civil Service Commission**
**Bridgeport, Connecticut**

Retained to develop content-valid promotion procedures for the
positions of Fire Lieutenant and Telecommunications Operator.
The project included conduct of a job analysis, development of a
written test and oral board examination, and administration of both.

**Consultant**
January 1986 to
February 1988

**City of St. Petersburg**
**St. Petersburg, Florida**

Retained to develop a promotion procedure for the positions of
Police Sergeant and Police Lieutenant. This project was a
continuation of the "Targeted Testing" format initiated in 1984.
The project included development of a pre-test study manual,
written examination, and an assessment center.

**Consultant**
September 1985 to
December 1985

**The American Civil Liberties Union**
**Hartford, Connecticut**

Retained as expert for the plaintiff in the case of Cicero Booker v.
City of Waterbury Connecticut. In this case, Black applicants
alleged that the promotional procedures used by the Waterbury
Police Department were discriminatory. I prepared a report stating
my opinion as to the validity and fairness of the promotional
procedures and submitted it to the Court.

**Consultant**
April 1985 to
September 1986

**San Francisco Lawyers Committee For Urban Affairs**
**San Francisco, California**

Retained as expert witness for the plaintiff in the case of United
States v. City of San Francisco. This was a Title VII case in which
Black and Female applicants for the position of Firefighter charged,
among other things, that the entry-level Firefighter Examination used
by the City of San Francisco (in 1984) was racially discriminatory.
The parties agreed upon a settlement of the case that called for the
development of a new entry-level examination.

**Consultant**
March 1985 to
December 1985

**Bridgeport Civil Service Commission**
**Bridgeport, Connecticut**

Retained to develop and validate a written examination for the
position of Police Officer. The project included conduct of a job
analysis, development, administration and scoring of a written test,
and documentation of its validity. I agreed to serve as expert
witness for the City of Bridgeport in the event of litigation
involving this test.

| | |
|---|---|
| **Consultant**<br>March 1985 to<br>July 1985 | **Communications Workers of America**<br>**Washington, D.C.** |

Retained to develop a training program aimed at improving the performance of CWA members on written tests and other selection and promotion procedures (e.g., work sample training modules) administered by the companies of the Bell System.

| | |
|---|---|
| **Consultant**<br>January 1985 | **Bramhall and Duncan**<br>**Attorneys at Law**<br>**Little Rock, Arkansas** |

Testified as expert witness for the plaintiffs in the case of Gilbert v. City of Little Rock. This case was remanded to the District Court after a ruling for plaintiffs by the Eighth Circuit Court of Appeals. The City of Little Rock's appeal to the U.S. Supreme Court was denied.

| | |
|---|---|
| **Consultant**<br>September 1984 to<br>July 1985 | **Baltimore City Civil Service Commission**<br>**Baltimore, Maryland** |

Retained to develop a content-valid promotion procedure for the positions of Police Sergeant and Lieutenant. Development of the Police Sergeant examination was ordered by the U.S. District Court for the District of Maryland in the case of Vanguard Justice Society v. Harry Hughes. I was selected by both plaintiffs and defendants (and approved by the Court) to develop the procedure.

| | |
|---|---|
| **Consultant**<br>June 1984 to<br>July 1984 | Bridgeport Civil Service Commission<br>Bridgeport, Commission |

Retained to develop and validate a written examination for the position of Firefighter. The project included conduct of a job analysis, development, administration and scoring of a written test, as well as documentation of its validity. I agreed to serve as expert witness for the City of Bridgeport in the event of litigation involving the test.

| | |
|---|---|
| **Consultant**<br>January 1984 to<br>July 1985 | **Bridgeport Civil Service Commission**<br>**Bridgeport, Connecticut** |

Retained to develop and validate a promotional procedure for the position of Police Detective. The project included conduct of a job analysis, as well as development of the procedure, its implementation, and documentation of its validity. I also agreed to serve as expert witness for the City of Bridgeport **in the event of litigation involving this procedure.**

**Consultant**
November 1983 to
January 1985

**Mexican American Legal Defense and Educational Fund**
**Chicago, Illinois**

Retained as expert for the plaintiff in the case of Rosario v. Cook County Department of Corrections. This case involved a charge of racial discrimination by Hispanic Corrections Officers seeking promotion to the position of Sergeant. The case was settled prior to trial.

**Consultant**
September 1983 to
December 1985

**City of St. Petersburg**
**St. Petersburg, Florida**

Retained to develop and/or guide the development of promotion procedures for several positions within the Police and Fire Departments, including Police Sergeant, Police Lieutenant, Fire Lieutenant, Fire Captain, and Deputy Chief. Each promotion procedure was based upon a system known as "Targeted Testing" developed by me. I also agreed to serve as expert witness for the City of St. Petersburg in the event of litigation involving these procedures.

**Consultant**
June 1983 to
December 1984

**New York State Department of Civil Service**
**Albany, New York**

Retained as consulting industrial psychologist to serve as plaintiff's representative in the development and implementation of new selection procedures for the positions of Correction Captain and Corrections Lieutenant in the New York State Department of Correctional Services. Development of the new procedures was ordered by the Court based upon a consent decree in the case of Kirkland v. New York State Department of Correctional Services.

**Consultant**
November 1982 to
January 1985

**Legal Action of Wisconsin Inc.**
**Milwaukee, Wisconsin**

Retained as expert witness for the plaintiff in the case of Martin v. State of Wisconsin.

**Consultant**
November 1982 to
June 1983

**Bridgeport Civil Service Commission**
**Bridgeport, Connecticut**

Retained to develop and administer a content-valid promotion procedure for the position of Police Sergeant. This project included conduct of a job analysis, development of a written test and structured oral interview, as well as implementation and scoring of the procedure. I agreed to serve as expert witness for the City of Bridgeport in the event of a legal challenge regarding the procedure. No such challenge arose.

**Consultant**
October 1982 to
October 1990

**Perry, First, Reiher, Lerner and Quindel**
**Attorneys at Law**
**Milwaukee, Wisconsin**

Retained as expert witness for the plaintiff in the case of League of Martin v. City of Milwaukee. This case involved a charge by Blacks within the Milwaukee Police Department that the Department's promotion procedures for positions above Police Officer, particularly those for Police Sergeant, were racially discriminatory. The case was settled prior to trial. As part of the settlement, defendants agreed to develop new promotion procedures. It was my responsibility to assist and advise counsel for plaintiffs with regard to monitoring the development of the new promotion procedures.

**Consultant**
September 1982 to
December 1987

**Rosen and Dolan**
**Attorneys at Law**
**New Haven, Connecticut**

Testified as expert witness for the plaintiffs in the case of Men and Women for Justice v. State of Connecticut. This was a Title VII case involving a charge of discrimination regarding the selection procedure for the position of State Trooper. The case was settled prior to a ruling by the Court. As part of the settlement agreement, I was designated by counsel for plaintiffs as consulting industrial psychologist responsible for assisting the Connecticut State Civil Service in the development of a new selection procedure for the position of State Trooper.

**Consultant**
August 1982 to
June 1995

**Arent, Fox, Kintner, Plotkin and Kahn**
**Washington, D.C.**

Retained as expert witness for the plaintiffs in the case of Cook v. Boorstin. This was a Title VII case that involved a charge by Blacks that certain promotion procedures used by the Library of Congress were racially discriminatory.

**Consultant**
April 1982

**McCants, Kramer and Gerals**
**Washington, D.C.**

Served as expert witness for the defendant in the case of Mccullough v. United Services Organization. This was a Title VII case involving a charge by a Black employee that she was denied a promotion because of her race.

| | |
|---|---|
| **Consultant**<br>January 1982 to<br>June 1995 | **City of Toledo**<br>**Toledo, Ohio** |

Retained as court-appointed expert in the case of Sarabia v. Duck. I was responsible for assisting the Toledo Civil Service Commission in the development and validation (in accordance with the Uniform Guidelines on Employee Selection Procedures) of a non-discriminatory selection procedure for the position of Police Officer. Responsibilities included assisting in the identification of subject areas to be tested, formulation of appropriate test questions, and standardization of each component of the selection process (e.g. background investigation, psychological evaluation and oral interview).

| | |
|---|---|
| **Consultant**<br>December 1981 to<br>April 1982 | **Personnel Department**<br>**City of Hartford**<br>**Hartford, Connecticut** |

**Developed a content-valid promotion procedure for the position of Police Sergeant. The project involved conduct of a job analysis, development, implementation, and scoring of the procedure, as well as documentation of its validity. I also agreed to testify as an expert witness for the City of Hartford in the event of a legal challenge regarding the procedure.**

| | |
|---|---|
| **Consultant**<br>December 1981 to<br>January 1982 | **Phillip Duncan and Manual Pruitt**<br>**Attorneys at Law**<br>**Little Rock, Arkansas** |

Testified as expert witness for the plaintiff in the case of Gilbert v. City of Little Rock. This was a Title VII case involving a charge by Blacks that the promotional procedures used by the Little Rock Police Department were racially discriminatory.

| | |
|---|---|
| **Consultant**<br>October 1981 to<br>January 1982 | **District of Columbia Government**<br>**Washington, D.C.** |

Retained to provide an assessment of the validity and fairness of the entry-level written examination for Police Officer. My primary responsibility was to provide a recommendation regarding the most appropriate use of the examination in light of professional standards and the Uniform Guidelines on Employee Selection Procedures and to make a recommendation as to available alternatives.

**Consultant**
August 1981 to
December 1982

**Sommers, Schwartz, Silver, and Schwartz**
**Southfield, Michigan**

Retained as expert witness for the plaintiff in the case of Geoffrion v. Rubbermaid, Inc. This was a case in which a female employee charged that her employer violated the Equal Pay Act by paying her less than her male counterparts for the same work.

**Consultant**
June 1981 to
December 1989

**The National Black Coalition of Federal Aviation Employees**
**Memphis, Tennessee**

Retained to provide technical assistance with regard to the validity and fairness of the selection procedures used by the Federal Aviation Administration to select Air Traffic Controllers.

**Consultant**
May 1981 to
September 1985

**Committee to Develop Joint Technical Standards for**
    **Educational and Psychological Testing**
**American Psychological Association, American Educational**
    **Research Association, and the National Council on**
      **Measurement in Education**
**Washington, D.C.**

Served as a technical advisor to the Committee. As such, I responded to specific questions, provided general counsel, and in some instances, reviewed Committee materials pertaining to the development of new joint technical standards for educational and psychological testing.

**Consultant**
April 1981 to
September 1981

**Biggs and Bataglia**
**Wilmington, Delaware**

Testified as expert witness for the plaintiff in the case of Wilmore, et al., v. City of Wilmington, et al. This was a Title VII case in which Blacks charged racial discrimination on the part of the Wilmington Fire Department through the use of racially discriminatory promotion procedures.

**Consultant**
January 1981 to
February 1981

**National Association of Social Workers**
**Washington D.C.**

Retained to provide technical advice with regard to the development of guidelines for the conduct of job analyses, when validating educational credentials.

**Consultant**
September 1980 to
January 1985

**The Law Project**
**Atlanta, Georgia**

Retained as expert witness for the plaintiff in the case of Jeanette Turner v. Georgia Department of Labor. Served as consultant to the plaintiff in the case of Kennedy, et al., v. Crittenden, et al. My responsibilities included assisting counsel in monitoring the development of new selection procedures at a large state hospital.

**Consultant**
September 1980 to
May 1981

**Puerto Rican Legal Defense and Educational Fund**
**New York, New York**

Retained as expert witness for the plaintiff in the case of Hispanic Society, et al., v. Civil Service Commission of the City of New York, and Guardians Association of the City of New York v. Civil Service Commission of the City of New York. In both Title VII cases, minorities charged that the New York City Police Department discriminated against them by using entry-level and promotion procedures that were not valid and had adverse impact. Both cases were settled prior to trial. As part of the settlement agreement, the City of New York agreed to retain consultants to develop new selection procedures for the positions of Police Officer and Police Sergeant. I was retained by counsel for plaintiff to monitor the development of new selection procedures. I cooperated with the City's consultants in developing the new entry-level Police Officer examination and provided assistance.

**Consultant**
August 1980 to
October 1980

**Jephunneh Lawrence**
**Attorney at Law**
**Washington, D.C.**

Testified as expert witness for the plaintiff in the case of Minnis, et al., v. The Home Loan Mortgage Corporation. This was a Title VII case in which the plaintiff charged that the defendant had discriminated on the basis of race by using promotion procedures that were not valid and had adverse impact.

**Consultant**
August 1980 to
September 1980

**Chambers, Stein, Ferguson and Becton, P.A.**
**Charlotte, North Carolina**

Retained to provide technical assistance to counsel for plaintiff regarding determination of the existence of adverse impact in the case of Bishop, et al., v. City of Greensboro Police Department.

**Consultant**
March 1980 to
May 1980

**Arent, Fox, Kintner, Plotkin and Kahn**
**Washington, D.C.**

Retained as expert witness for the plaintiff in the case of Miller v.
Staats. This case involved a charge by Black employees of the
Government Services Administration that the agency discriminated
against them by making use of a promotion procedure (and, more
specifically, a performance appraisal process) that was not valid
and had adverse impact. The case was settled prior to trial. As part
of the settlement, the Government Services Administration agreed
to retain an outside consultant to develop new promotion procedures.
I assisted counsel for plaintiffs in monitoring this work.

**Consultant**
January 1980 to
November 1980

**Detroit Police Department**
**Detroit, Michigan**

Retained to develop content-valid promotion examinations for the
positions of Police Sergeant and Police Lieutenant. Both examinations
were developed on the basis of a system called "Targeted Testing"
created by me. Both examinations proved to be valid and fair and
produced no adverse impact.

**Consultant**
June 1979 to
June 1981

**San Francisco Lawyers Committee For Urban Affairs**
**San Francisco, California**

Retained as expert witness for the plaintiff in the case of Luevano
v. Campbell. This was a Title VII case in which plaintiff charged
that the U.S. Civil Service Commission relied upon a racially
discriminatory examination (PACE) in screening candidates for
middle-management positions in the Federal Government. The case
was settled prior to trial. The Civil Service Commission agreed to
discontinue use of the test.

**Consultant**
May 1979 to
December 1989

**Communications Workers of America**
**Washington, D.C.**

Retained to provide technical assistance with regard to the
evaluation (as to validity and fairness) of selection procedures
developed by the American Telephone and Telegraph Company.

**Consultant**
May 1979 to
January 1981

**University Research Corporation**
**Washington, D.C.**

Retained to evaluate selection procedures used by police
departments throughout the United States that received funds from
the Law Enforcement Assistance Administration.

**Consultant**
February 1979 to
February 1986

**Institute for Public Representation**
**Georgetown University Law Center**
**Washington, D.C.**

Retained as technical expert for the plaintiffs in the case of Mckenzie
v. Boyle. I developed a model promotional procedure for the
position of Offset Printing Press Operator.

**Consultant**
December 1978 to
December 1980

**Yablonski, Both and Edelman**
**Washington, D.C.**

Retained as expert witness for the plaintiff in the case of Hubbard v.
Rubbermaid Inc. This case involved a charge by female employees
that the company violated the Equal Pay Act by paying them less
than their male counterparts for performing the same work. The case
was settled prior to trial.

**Consultant**
October 1978 to
October 1981

**Arnold and Porter**
**Washington, D.C.**

Testified as expert witness for the plaintiff in the case of NAACP v.
Prince George's County, Maryland. This case involved a charge by
Blacks that Prince George's County discriminated against them by
utilizing promotional procedures that were not valid and had
adverse impact.

**Consultant**
August 1978 to
April 1979

**Wilmer Cutler and Pickering**
**Washington, D.C.**

Testified as expert witness for the plaintiff in the case of Segar v.
Civiletti. This was a Title VII case in which plaintiffs charged that
the Drug Enforcement Administration discriminated against them
by utilizing a promotion procedure, specifically a performance
appraisal process, that was not valid and had adverse impact.

**Consultant**
July 1978 to
December 1982

**City of Cincinnati**
**Cincinnati, Ohio**

Retained to train personnel department staff in the areas of job
analysis, test development, and test validation. I developed and
validated employment tests for the positions of Assistant
Supervisor Municipal Garage and Community Center Director II.

| | |
|---|---|
| **Consultant**<br>July 1978 to<br>July 1980 | **McDonald and McDonald**<br>**Attorneys at Law**<br>**Houston, Texas** |

Testified as an expert witness for the plaintiff in the case of Cormier v. Pittsburgh Plate Glass Company. This was a Title VII case in which plaintiff charged that the company discriminated against Black applicants by utilizing employment tests that were not valid and had adverse impact.

| | |
|---|---|
| **Consultant**<br>July 1978 to<br>July 1979 | **Lawyers' Committee for Civil Rights Under Law**<br>**Washington, D.C.** |

Retained as expert witness for the plaintiff in the case of Tarver, et al., v. City of Houston, et al. This was a Title VII case in which plaintiff charged that the Police and Fire Departments of the City of Houston discriminated against Blacks by utilizing entry-level and promotion procedures that were not valid and had adverse impact. The case was settled prior to trial. As part of the settlement, the City of Houston agreed to develop new selection procedures for both the Police and Fire Departments.

Testified as an expert witness for plaintiff in the case of Pegues v. Mississippi State Employment Service. This was a Title VII case in which plaintiff charged that the Mississippi State Employment Service discriminated against Blacks by utilizing employment tests that were not valid and had adverse impact.

| | |
|---|---|
| **Consultant**<br>April 1978 to<br>June 1978 | **Prince George's County Government**<br>**Prince George's County, Maryland** |

Retained to develop entry-level written examinations for the positions of Firefighter and Correctional Officer.

| | |
|---|---|
| **Consultant**<br>April 1978 to<br>May 1978 | **George M. Strickler**<br>**Attorney at Law**<br>**New Orleans, Louisiana** |

Retained as expert witness for the plaintiff in the case of Johnson, et al., v. City of Shreveport, et al. This was a Title VII case in which plaintiff charged that the Fire Department of the City of Shreveport discriminated against Blacks by utilizing selection procedures that were not valid and had adverse impact.

**Consultant**
June 1977 to
August 1977

**Legal Aid Society**
**Alameda County, California**

Retained as expert witness for the plaintiff in the case of Ellis v.
Naval Air Rework Facility. This was a Title VII case in which
plaintiff charged that the Naval Air Rework Facility discriminated
against Blacks by utilizing selection procedures that were not valid
and had adverse impact. The case was settled prior to trial.

**Consultant**
May 1977 to
March 1984

**NAACP Legal Defense and Educational Fund**
**Washington D.C.**

Retained as expert witness for the plaintiff in the cases of Williams
v. City of New Orleans and Howard v. McLucas. These were
Title VII cases in which plaintiff charged that the employer
discriminated against Blacks by utilizing selection procedures that
were not valid and had adverse impact. Both cases were settled
prior to trial.

Testified as expert witness for the plaintiff in the cases of Chisholm
v. U.S. Postal Service, Harrison v. Lewis, Lewis v. National Labor
Relations Board, and Griffin v. U.S. Postal Service. These were
Title VII cases in which plaintiffs charged that the employer
discriminated against Blacks by utilizing selection procedures that
were not valid and had adverse impact.

*Professional Conference Papers and Presentations*

**May 2006**

**Twenty-First Annual Conference of**
**The Society for Industrial and**
**Organizational Psychology**

Conducted a half-day workshop entitled "Recent Practical,
Methodological and Statistical Advances in the Detection of
Adverse Impact and Test Bias

Made a presentation entitled "Adverse Impact: What Is It and What
Can be Done About It"

**April 2005**

**Twentieth Annual Conference of**
**The Society for Industrial and**
**Organizational Psychology**

Made a presentation entitled "Race Discrimination Cases: Past,
Present and Future."

**April 2003**        **Personnel Testing Council of**
                      **Metropolitan Washington DC**

                      Presented an address entitled "Cognitive Ability & Workforce
                      Diversity: Can They Co-Exist?

**March 2002**        **Mid-Winter Conference**
                      **American Bar Association**
                      **Section of Labor and Employment Law**
                      **Employment Rights and Responsibilities Committee**
                      **Puerto Vallarta, Mexico**

                      Presented an address entitled "Selection Procedures in Reductions-
                      in-Force."

**January 2002**      **Winter Conference**
                      **Mid-Atlantic Personnel Assessment Consortium**
                      **Baltimore, Maryland**

                      Presented an address entitled "The Development and Validation of
                      a Firefighter Test Battery."

**May 2001**          **Spring Conference**
                      **Personnel Testing Council of Southern California**
                      **Covina, California**

                      Delivered keynote address entitled "Issues in Personnel Selection:
                      The Past Quarter Century to 2010."

**April 2000**        **Fifteenth Annual Conference**
                      **Society for Industrial and Organizational Psychology**
                      **New Orleans, Louisiana**

                      Presented an address entitled "A Base Rate Study of Firefighter
                      Selection."

**March 2000**        **Institute of People Management of South Africa**
                      **Assessment Center Study Group**
                      **Capetown, South Africa**

                      Presented an address entitled "Utilizing the Assessment Center to
                      Measure Competencies Derived from the Organization's Mission
                      and Vision."

                      Presented an address entitled "Utilizing Creative Assessment
                      Centers to Achieve Greater Equity in the Work Force."

**April 1998**          **Thirteenth Annual Conference**
**Society for Industrial and Organizational Psychology**
**Dallas, Texas**

Presented a half-day pre-conference workshop entitled "Video-Based Situational Training: Pros and Cons."

Presented a symposium addressing the pros and cons of banding.

**July 1994 to**       **Lang and Padgett**
**January 1995**       **Washington, D.C.**

Conducted three one-day workshops on the use of statistics in Title VII cases.

**October 1994**       **Industrial and Organizational Psychology Program**
**Institute for Psychological Research and Application**
**Department of Psychology**
**Bowling Green State University**
**Conference on Evaluating Alternatives to Traditional Testing**

Presented a lecture entitled "Testing Medium, Validity, and Test Performance."

**May 1993**           Eighth Annual Conference
Society for Industrial and Organizational Psychology
San Francisco, California

**Presented a paper entitled "Reducing Adverse Impact Without Reducing Validity."**

**May 1992**           Seventh Annual Conference
Society for Industrial and Organizational Psychology
Montreal, Canada

**Presented a paper entitled "The Social and Political Nature of Selection."**

**Presented a paper entitled "The Sliding Band Referral Method: A Perspective from the U.S. Public Sector."**

| | |
|---|---|
| **April 1991** | **Sixth Annual Conference**<br>**Society for Industrial and Organizational Psychology**<br>**St. Louis, Missouri** |

Participated as a discussant in a symposium entitled "Integrity Testing: Reports from the Office of Technology Assessment and the American Psychological Association."

| | |
|---|---|
| **April 1990** | **Fifth Annual Conference**<br>**Society for Industrial and Organizational Psychology**<br>**Miami, Florida** |

Presented a paper entitled "Affirmative Action in the 1990s."

Presented a Master Tutorial with Dr. Wayne Cascio on "Innovations in Testing."

| | |
|---|---|
| **June 1989** | **International Personnel Management Association**<br>    **Assessment Council**<br>**Conference On Personnel Assessment**<br>**Orlando Florida** |

Presented a one-day workshop entitled "Innovations in Employment Testing That Improve Validity and Reduce Adverse Impact."

Participated in a panel discussion entitled "The *Guidelines* in the Year 2000."

Participated in a panel discussion entitled "Testing in the Public Sector under a Consent Decree."

Participated in a panel discussion entitled "Banding and Other Uses of Eligible Lists: Psychometric, Legal, and Social Considerations."

| | |
|---|---|
| **April 1985** | **Dayton Intergovernment Equal Employment**<br>**Opportunity Council**<br>**Dayton, Ohio** |

Participated in the eleventh annual EEO Seminar sponsored by the Federal Executive Association of the Dayton Intergovernment Equal Employment Opportunity Council. I conducted a workshop on the use of employment tests.

| | |
|---|---|
| **April 1985** | **Hispanic National Bar Association National Convention**<br>**New York, New York** |
| | Gave an address on the topic of "Affirmative Action." |
| **January 1985** | **Washington Statistical Society**<br>**Washington D.C.** |
| | Presented comments, as a discussant, on the topic "Psychometrics in Personnel Selection." |
| **December 1984** | **Association of American Railroads**<br>**Thirty-Third Annual Conference of the Committee on Equal**<br>**Employment Opportunity**<br>**Washington, D.C.** |
| | Presented a paper entitled "Employment Testing and Minorities: Recent Trends and Lingering Issues." |
| **September 1984** | **Federal Bar Association/Bureau of National Affairs**<br>**EEO Briefing Conference**<br>**Washington, D.C.** |
| | Presented a paper entitled "The Benefits of Testing to Minorities." |
| **October 1983** | **International Personnel Management Association**<br>**Washington, D.C.** |
| | Presented a paper entitled "Alternative Uses of Traditional Selection Procedures." |
| **August 1983** | **American Psychological Association**<br>**Washington, D.C.** |
| | Presented comments, as a discussant, in a symposium entitled "Performance Appraisal in the Legal Environment." |
| **May 1983** | **International Personnel Management Association**<br>**Assessment Council**<br>**Washington, D.C.** |
| | Presented a paper entitled "Alternative Uses of Traditional Selection Procedures." |

**December 1982**      **International Association of Official Human Rights Agencies**
                       **Washington, D.C.**

                       Presented an address on the use of statistical evidence in housing
                       discrimination cases.

**October 1982**       **Bureau of National Affairs**
                       **Fifth Annual Conference**
                       **Washington, D.C.**

                       Presented an address on issues involved in the assessment of
                       discrimination against the handicapped.

**January 1982**       **Commission for Racial Equality**
                       **Conference on Law Enforcement Strategies and Tactics**
                       **Oxford University, Oxford, England**

                       Presented a paper entitled "The Role of the Industrial Psychologist
                       in an Employment Discrimination Case."

**June 1979**          **International Personnel Management Association**
                       **Washington, D.C.**

                       Presented a paper entitled "Validation: Art Science of Folly."

**June 1979**          **Association of Black Psychologists**
                       **Washington, D.C.**

                       Conducted a workshop on methods of teaching test-taking.

**February 1978**      **Howard University College of Nursing**
                       **Washington, D.C.**

                       Designed and conducted a lecture series on educational evaluation.

**January 1978**       **Institute of Public Service**
                       **Hartford, Connecticut**

                       Designed and conducted a day-long workshop on the proper
                       development of oral examinations.

**August 1977**        **Prince George's County Office of Personnel**
                       **Upper Marlboro, Maryland**

                       Designed and conducted a two-day workshop on the proper method
                       of conducting performance appraisals.

**August 1975**           **American Psychological Association**
                          **Annual Convention**
                          **Chicago, Illinois**

                          Presented a paper entitled "Process Criteria: The Content of the
                          Black Box."

                          *Previous Employment*

**Personnel Analyst**     **Prince George's County Office of Personnel**
July 1976 to              **Upper Marlboro, Maryland**
July 1977

                          Evaluated the overall employment selection system of the County
                          to determine where it might be improved in order to comply with
                          the Uniform Guidelines on Employee Selection Procedures.

**Consultant**            **Maryland State Department of Personnel**
**Psychologist**          **Baltimore, Maryland**
(Part Time)
May 1975 to               Directed and gave assistance in the conduct of criterion-related
July 1979                 and content validation studies. Responsibilities included conduct
                          of job analyses, development of selection instruments and
                          criterion measures, as well as statistical analysis of research
                          results. I also directed the development of a comprehensive job
                          analysis procedure designed to produce accurate descriptions of
                          job components in accordance with the requirements of the
                          Uniform Guidelines on Employee Selection Procedures.

**Personnel**             **Internal Revenue Service**
**Psychologist**          **Washington, D.C**.
May 1975 to
September 1975            Conducted concurrent validation studies of the procedures used for
                          selection to noncompetitive positions within the IRS. Developed
                          research plans and experimental designs for research projects in
                          such areas as personnel selection, job analysis, performance
                          evaluation, and test development.

**Graduate Assistant**    **University of Maryland**
September 1972 to         **College Park, Maryland**
May 1975
                          Taught a three-hour course in industrial psychology. The course
                          was designed for junior- and senior-level students. I assisted in
                          the conduct of research related to selection and training.

| | |
|---|---|
| **Instructor/Counselor**<br>September 1971 to<br>May 1972 | **Northeast Louisiana University**<br>**Monroe, Louisiana** |

Taught introductory psychology courses and served as student counselor.

| | |
|---|---|
| **Personnel Assistant**<br>June 1969 to<br>August 1971 | **Olinkraft, Inc.**<br>**West Monroe, Louisiana** |

Tested all applicants for hourly employment, including screening of applications, scoring of tests, and establishment of norms. My responsibilities included validation of company tests. I recruited persons from minority groups to fill managerial positions within the company.

### *College Teaching*

| | |
|---|---|
| **College Instructor**<br>(Part Time)<br>August 1977 to<br>May 1987 | **Howard University College of Nursing**<br>**Washington, D.C.** |

Taught courses in basic and advanced problem solving. Course content included theoretical and practical analyses of problems and problem solving, with emphasis on development of critical thinking skills, analytical reasoning, and test-wiseness.

### *Military Service*

| | |
|---|---|
| **First Lieutenant**<br>May 1972 to<br>September 1972 | **United States Army**<br>**Fort Benning, Georgia** |

Attended officer's basic training, Military Intelligence Branch, United States Army. Placed in reserve status for seven years until honorably discharged with the rank of Captain.

### *Community Service*

| | |
|---|---|
| **May 1994 to**<br>**June 1995** | **Good Counsel High School Parents' Association**<br>**Wheaton, Maryland** |

Chairman, Equity Committee

| | |
|---|---|
| **May 1994 to**<br>**July 1994** | **Potomac Valley Amateur Athletic Union**<br>**Washington, D.C.** |

Assistant Basketball Coach - Girls 11 and Under

| | |
|---|---|
| **January 1994 to**<br>**March 1996** | **Concordia Lutheran School**<br>**Hyattsville, Maryland** |

Girls Basketball Coach

| | |
|---|---|
| **November 1982**<br>**to 1990** | **St. Mary's Athletic Association**<br>**Landover Hills, Maryland** |

Catholic Youth Organization Boys Basketball Coach

| | |
|---|---|
| **April 1992 to**<br>**May 1992** | **Potomac Valley Amateur Athletic Union**<br>**Washington, D.C.** |

Basketball Coach - Boys 16 and Under

| | |
|---|---|
| **September 1967 to**<br>**March 1968** | **Varsity Basketball Coach, Little Flower Academy, Monroe,**<br>**Louisiana** |

# Appendix B

## List of Documents Relied Upon

1. Deposition of Patricia A. Hite of October 25, 2007
2. Deposition of James Beninati of October 15, 2007
3. Deposition of George Sinnott of October 29, 2007
4. Deposition of Paul D. Kaiser of June 21, 2007
5. Continued Deposition of Paul Kaiser, of October 29, 2007
6. Deposition of Ray Mullin of August 20 2007
7. Simpson et al vs. NY Dept of Civil Service et al. Defendant's Response to Plaintiff's First Set of Interrogatories
8. Simpson et al vs. NY Dept of Civil Service et al. Defendant's Mandatory Disclosure
9. Memo Regarding "Attached Prior Approval Request"
10. Plaintiff's Exhibits 1 through 67
11. Plaintiff's Exhibits 100 through 106
12. Examination Announcement for Michigan Mid-Management Examination
13. Study Guide for Michigan Mid-Management Examination
14. Testing Division Staff Involve in Promotion Test Battery Development
15. Quality Standards/Innovative Applications, A Report of the Governor's Task Force on the New Your State Civil Service System, December 1995
16. Content of Examinations in the G-19 to G-26 Range
17. Content of Examinations in the G-27 and Above Range
18. Occupational Study of Federal Executives, Managers and Supervisors, US> Office of Personnel Management
19. Sample Letter and Attached Questionnaire to 1998 Job Analysis Subject Matter Experts
20. Spreadsheet "Job Analysis for Test Batteries"
21. Report on "Linkages of 1996 Promotion Test Battery Multiple Choice Material to Written Communication and Analysis Dimensions from Job Analysis
22. Memo regarding "Written Communication Rubric for Promotion Test Battery"
23. Sample Letter to State Agencies Requesting Subject Matter Experts to Help Develop the Promotion Test Battery
24. Memo regarding "Test Development Meeting for Preparing Written Material (etc.) Component of Level 1 Test Battery"
25. Memo regarding "Meeting On 2/3 Level Battery Written Communication Material"
26. Announcement for the 1996 Promotion Test Batteries
27. Payroll Flyer Alerting Employees to the 1996 Promotion test Batteries
28. NYS Dept of Civil Service General Information Bulletin No. 96-01
29. NYS Dept of Civil Service General Information Bulletin No. 96-03
30. NYS Dept of Civil Service General Information Bulletin No. 96-06
31. NYS Dept of Civil Service General Information Bulletin No. 96-07
32. NYS Dept of Civil Service General Information Bulletin No. 96-08

33.  Court of Appeals Decision "McGowan v Burstein"

34.  Memo regarding "Zone Scoring Guidelines"

35.  Sample Score Notice for the Supervisors and Specialists Promotion Test Battery

36.  Sample Score Notice for the Mid-Level and High-Level Managers and Administrators Promotion Test Battery

37.  Sample Report of Promotion Test Battery Scores for the Supervisors and Specialists Promotion Test Battery

38.  Sample Report of Promotion Test Battery Scores for the Mid-Level and High-Level Managers and Administrators Promotion Test Battery

39.  Sample Report of Promotion Test Battery Scores for all levels available online (Levels 1 & 2 from 1999 through 2005)

40.  Sample Candidate Survey Summary

41.  Deposition of Elizabeth Kaido of August 29, 2007

## Appendix C: Previous Testimony

Listed below are the cases in which I have testified in the past four years.

Sharon Phillips, et al., vs. Washington Suburban Sanitary Commission, et al,. Circuit Court for Prince George's County Maryland, Case No. CAL 04-12870.

John Bolton v. City of Bridgeport, Superior Court Judicial District of Fairfield, Connecticut, Docket No. CV 04-0409828 S.

Arthur L. Lewis, Jr., et al., v. City of Chicago, United States District Court Northern District of Illinois, Eastern Division, Case No. 98 C 559k.

Jeffrey Horan, et al., v. City of Chicago, United States District Court, Northern District of Illinois, Eastern Division, No. 98 C 2850.

Johnny Reynolds, et al., v. Alabama Department of Transportation, et al., United States District Court Northern Division No. CV 85-T-665-N.

Shaaron Phillips et al., v. Washington Suburban Sanitary Commission, et al., Circuit Court for Prince George's County, Case No. CAL 04-12870.

Shirley Williams, v. Sprint/United Management Company, United States District Court, District of Kansas, No. 03-2200-JWL.

Equal Employment Opportunity Commission, et. al., v. Outback Steakhouse of Florida, et. al., v. United States District Court District of Colorado No. 06-CV 01935-EWN-BNB.

**Appendix D**

# Employment Testing

## Contemporary Approaches to Improving Validity

## While Reducing Adverse Impact

A Three Day Workshop

Sponsored by the New York State

Civil Service Department

Presented By

James L. Outtz Ph.D.
Industrial Psychologist
816 Connecticut Ave., N.W.
Suite 800
Washington, DC  20006

February 27th through March 1, 1989

Workshop Outline

I. Introduction

    Purpose of the Workshop

    Administrative Issues

II. Adverse Impact and Validity Defined

    The 80% Rule

    Statistical Significance

III. Reducing Adverse Impact by Improving Candidate Expectations and Preparation.

    A) The job analysis

        - Identifying Critical Job Knowledge, Skills and Abilities <u>Within Context.</u>

    B) Use of Targeted Assessment Strategies

        Home Study Manuals

        Pre-test Orientation Sessions

            - Description of the process

            - How to Prepare

            - Question and Answer Session for Applicants

        Pre-Test Physical Fitness Training

        Sample Tests

        Video Presentation of Pre-test Information

    C) Assessing Applicant Readiness

    D) Identifying Correlates of Test Performance

IV. Testing Format/Content and Adverse Impact

    A) Variations of the Standard Multiple Choice Test Question

        - Situational Questions Versus Questions Covering General Principles

        - Focusing the Scope of Test Items Based Upon the Job Analysis

        - Structuring Test Questions to Measure the Appropriate Level of Job
          Knowledge

        - Testing for Knowledge of Policy versus Everyday Practice

    B) Open Book Tests

    C) Written Tests Based Upon Visual Information

    D) Visual Interactive Written Tests

    E) Oral Board Examinations

    F) Job Simulations

V. Interpreting Test Scores

    A) Setting Cutoffs

    B) Top-down Strict Rank Order

    C) Within Group Percentiles

    D) Band Scoring

        Fixed Bands – Random Referral within Bands

        Fixed Bands – Affirmative action Referral within Bands

        Sliding Bands – Random Referral within Bands

        Sliding Bands – Affirmative Action Referral within Bands